**MIDDLE TENNESSEE NEWS CO., INC. d/b/a Austin Book and Merchandise, Plaintiff–Appellee,**

v.

**CHARNEL OF CINCINNATI, INC., Charnel of Louisville, Inc., Charnel Co., Inc. and Steve Nelson, in his Individual capacity, Defendants–Appellants.**

No. 00–2296.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 24, 2001.

Decided May 8, 2001.

Evan E. Steger, Michael A. Wilkins (argued), Ice Miller, Indianapolis, IN, for Plaintiff-Appellee.

Joseph C. Lewis, Jr. (argued), Indianapolis, IN, for Defendants-Appellants.

Before FLAUM, Chief Judge, EVANS, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

Although tentatively scheduled for trial, this case, which essentially is a contract dispute, was disposed of on the merits by the district court through the appointment of an independent accountant whose findings were adopted by the district court as final on the issues of liability and damages. The defendants, Charnel of Cincinnati, Inc., Charnel of Louisville, Inc., Charnel Company, Inc. and Steve Nelson (collectively "Charnel"), now raise several jurisdictional issues and challenge the district court's disposition of this case as a denial of their right to jury trial.

## I

On December 9, 1997, Middle Tennessee News Co., Inc., doing business as Austin Book and Merchandise ("Austin"), brought a diversity action in federal court against Charnel, alleging essentially a breach of contract for Charnel's failure to pay the amount due and owing on a series of prior sales to Charnel Companies (to whom we shall return in a moment). Austin alleges in its complaint that it "sold on account and delivered" books to Charnel from November 14, 1995 through May 26, 1997. It also alleges that Charnel—through Nelson, who is the president and sole shareholder of Charnel of Cincinnati, Charnel of Louisville and Charnel Company—held themselves out to Austin at all times as one corporation, i.e., the Charnel Companies.

The district court held a pre-trial conference with the parties on June 8, 1999. The parties dispute what actually occurred in this conference, and the only record of

what transpired is the district court's order dated that same day. In it, the district court states that counsel for Charnel said that he was not ready for trial because "there was substantial accounting work to be done, and that he had had discussions with Counsel for [Austin] about the use of a third-party accountant."[1] Counsel for Austin acknowledged that "certain issues [were] more amenable to resolution by an accounting [sic] rather than by lawyers and juries," and indicated that "he would not object to the procedure if [Charnel] would agree to pay the amount found due and owing by the third-party accountant within thirty (30) days of the submission of his/her findings." The district court then adopted these suggestions and generally outlined a procedure whereby an independent accountant would decide the issues in this case, under the supervision of a magistrate judge and with the participation of the parties.

Once the district court released the order to the parties, Charnel twice objected, stating that it had not agreed to this procedure and refused to participate. Over Charnel's repeated objections, the district court proceeded, the independent accountant made findings of liability and damages (on the basis of only Austin's submissions) and the district court adopted the findings, resulting in judgment in favor of Austin. Charnel now appeals.

## II

### A

 At the outset, we must address our jurisdiction in this case. See *generally Cook v. Winfrey*, 141 F.3d 322, 325 (7th

---

1. A separate, but similar, contract dispute between Anderson Austin News Co., LLC ("Anderson Austin") and Charnel was litigated with this case, until the Anderson Austin case was dismissed for lack of diversity jurisdiction. Austin and Anderson Austin were represented by the same counsel. The district court, and the parties, referred to counsel as Anderson Austin's, for simplicity. We use Austin because they are the only party in this case.

Cir.1998) ("The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception.") (alteration in original) (internal quotation marks omitted). Where jurisdiction is challenged as a factual matter, the party invoking jurisdiction has the burden of supporting the allegations of jurisdictional facts by competent proof, *NLFC, Inc. v. Devcom Mid–America Inc.*, 45 F.3d 231, 237 (7th Cir.1995), which means "proof to a reasonable probability that jurisdiction exists." *Target Market Publishing, Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1142 (7th Cir.1998). In diversity cases, when there are two or more defendants, plaintiff may aggregate the amount against the defendants to satisfy the amount in controversy requirement only if the defendants are jointly liable; however, if the defendants are severally liable, plaintiff must satisfy the amount in controversy requirement against each individual defendant. *Motorists Mut. Ins. Co. v. Simpson*, 404 F.2d 511, 513 (7th Cir.1969).

 For individual defendant Nelson, Austin has not met its burden of demonstrating to a reasonable probability that jurisdiction exists in diversity, because Austin has neither alleged a separate amount in controversy against him nor demonstrated that he may be held jointly liable for corporate debts. Under Indiana law,[2] corporate officers and shareholders acting on behalf of the corporation are generally not liable for the contractual obligations of the corporation. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1231 (Ind.1994). Indiana courts are reluctant to disregard corporate form, but will do so to prevent fraud or injustice to third parties. *Id.* at 1232.

 To determine whether piercing the corporate veil is appropriate, plaintiffs must show that "the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice," under an eight-factor balancing test.[3] *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind.1994). Austin has presented no evidence that justifies piercing the corporate veil and holding Nelson liable for corporate debts. We find the sole evidence that Nelson held out his corporations as and did business as Charnel Companies insufficient to hold Nelson personally liable for the debt of the corporations.

 For corporate defendants Charnel of Cincinnati, Charnel of Louisville and Charnel Company, however, Austin has met its burden of demonstrating to a reasonable probability that jurisdiction exists in diversity. That these three companies, through their shared president and sole shareholder, Nelson, at all times held themselves out as and did business as one corporation, i.e., the Charnel Companies, is sufficient to hold them jointly liable.[4] See

---

**2.** We assume, as do the parties, that Indiana law and not that of another state applies.

**3.** A court must balance evidence of (1) undercapitalization, (2) absence of corporate records, (3) fraudulent representation by corporation shareholders or directors, (4) use of the corporation to promote fraud, injustice or illegal activities, (5) payment by the corporation of individual obligations, (6) commingling of assets and affairs, (7) failure to observe required corporate formalities, and (8) other

shareholder acts or conduct ignoring, controlling or manipulating the corporate form. *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994).

**4.** To support this allegation, Austin offers Charnel's answer to the same allegation in the Anderson Austin case, in which Charnel admitted that they had held themselves out at all times as one corporation, using the name Charnel Companies.

**1082**

*Clarke Auto Co., Inc. v. Fyffe*, 124 Ind. App. 222, 116 N.E.2d 532, 535–36 (1954). In this case, like the case in *Clarke Auto*, Austin has demonstrated to a reasonable probability that "the business of these corporations was conducted in such a manner that innocent third parties had no way of knowing with which they were dealing," and therefore the three companies cannot claim the benefit of the corporate form to separate and limit liability. *Id.* at 536.

 Our inquiry into jurisdiction is not complete, however.[5] On December 9, 1999, Charnel of Cincinnati and Charnel of Louisville ("petitioners") filed voluntary petitions for Chapter 7 bankruptcy and, as a consequence, they received the protection of an automatic stay under 11 U.S.C. § 362(a)(1), which stayed the "commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor." *Id.* The automatic stay remains in effect until the bankruptcy court disposes of the case or grants relief from the stay. *Matter of Williams*, 144 F.3d 544, 546 (7th Cir.1998). Actions taken in violation of an automatic stay ordinarily are void.[6] *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir.1984); see *also Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir.1998).

In this case, an automatic stay arose on December 9, 1999—the date petitioners filed for bankruptcy—and continued until

the bankruptcy court ultimately granted the petitioners' motions to voluntarily dismiss the cases on March 24, 2000.[7] Although both parties were aware of the bankruptcy case, neither informed the district court of it and the parties proceeded as if there were no stay.

On November 17, 1999, and before the stay, the independent accountant appointed by the magistrate judge, pursuant to the order of the district court, made his findings of liability and damages. While the stay was in effect, the independent accountant submitted his report to the district court and the magistrate judge, again pursuant to the order of the district court, allowed the parties an opportunity (1) to submit any objections to the independent accountant's findings so that he could consider them and make any changes before the findings became final and (2) to raise any other issues of material fact. But continuing in protest of the procedure, Charnel elected not to object. After the stay had expired, on April 10, 2000, the district court accepted the independent accountant's report and entered judgment.

Although we must consider the magistrate judge's action void because taken in violation of the stay, it was not necessary for, nor a material element in, the district court's entry of judgment. The independent accountant made his findings before the stay went into effect and no one, at any time, objected to the substance of the find-

---

5. Austin was provided an opportunity to respond to the issues that follow, but declined to file a surreply brief with this court (or request an extension of time to do so). This failure waives any objections, not obvious to the court, to specific points urged by Charnel. See *Hardy v. City Optical Inc.*, 39 F.3d 765, 771 (7th Cir.1994).

6. We have no occasion to reconsider our precedent and forage into the debate among the circuits over whether such actions are void or merely voidable, *compare In re Schwartz*, 954

F.2d 569, 570–75 (9th Cir.1992) (void) *with Bronson v. United States*, 46 F.3d 1573, 1576–82 (Fed.Cir.1995) (voidable) *and Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 909–12 (6th Cir.1993) (invalid), because it is not necessary to the disposition of this case.

7. A brief ten day interval existed when the stay was not in effect, between the bankruptcy court's initial grant of petitioners' motions to dismiss the cases and that court's order vacating the dismissals and reinstating the cases.

ings. Consequently, we believe the district court's judgment, adopting these findings, did not violate the stay.

In conclusion, we find that there was insufficient evidence to maintain diversity jurisdiction over Nelson—who therefore must be dismissed from this action—and that there was sufficient evidence to maintain diversity jurisdiction over Charnel of Cincinnati, Charnel of Louisville and Charnel Company (the bankruptcy stay notwithstanding).

### B

Now that we have settled jurisdiction, we turn to the substantive issue in this appeal: whether the district court properly entered judgment on the basis of the independent accountant's report. Both parties were entitled to and Austin in fact demanded a jury trial. Federal Rule of Civil Procedure 38(d) states that once a demand for jury trial has been made, it may not be withdrawn without the consent of both parties. *Id.* Although the case might have been decided on summary judgment, that was not done here. Rather, the district court decided to refer the issues of liability and damages to an independent accountant, and effectively transformed this case into a bench trial by adopting the findings of the appointed accountant and entering judgment. Austin argues that this was consistent with Rule 53 (appointment of a special master) and that Charnel consented to this procedure. We disagree.

Regardless of the initial propriety of the district court's reference under Rule 53,[8] after the independent accountant made his findings, the district court could entertain a motion for summary judgment or proceed to trial. See Fed.R.Civ.P. 56 and 53(e). The consent of

the parties was necessary for the district court to adopt the findings and enter judgment. See Fed.R.Civ.P. 38(d). In reviewing consent to waive a right to jury trial, Rule 39(a)(1) provides one applicable standard: "[T]he parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury." *Id.* But this court has not required strict compliance with Rules 38 and 39 to effect a waiver of a jury demand. See *Reboy v. Cozzi Iron & Metal, Inc.*, 9 F.3d 1303, 1306 (7th Cir.1993). A party's conduct may also effectively waive its right to jury trial. *Id.* Nevertheless, there is a presumption against waiver of the constitutional right to jury trial. See *Winter v. Minnesota Mut. Life Ins. Co.*, 199 F.3d 399, 408 n. 11 (7th Cir.1999) (citing *Jennings v. McCormick*, 154 F.3d 542, 545 (5th Cir.1998) (explaining that courts must use every reasonable presumption against waiver of a jury demand)).

The only record we have of the final pretrial conference where Charnel is said to have agreed to the independent accountant procedure adopted by the district court is the June 8, 1999 order. But on the basis of that order, we cannot conclude that Charnel waived its right to jury trial on the issues of liability and damages. The order states that counsel for Charnel said that he was not ready for trial because "there was substantial accounting work to be done, and that he had had discussions with Counsel for [Austin] about the use of a third-party accountant." Counsel for Austin acknowledged that "certain issues [were] more amenable to resolution by an accounting [sic] rather than by lawyers and juries," and indicated that "he would not object to the procedure if [Charnel]

---

**8.** The district court did not need the consent of the parties to refer "complicated" issues to an independent accountant under Rule 53. See Fed.R.Civ.P. 53(b).

would agree to pay the amount found due and owing by the third-party accountant within thirty (30) days of the submission of his/her findings." Nothing more is said. The district court, then, proceeded to adopt the "recommendations, suggestions and agreements of the parties."

■ Shortly after that order, Charnel objected that it had not consented to the resolution of the issues in the case by an independent accountant. Charnel filed two separate motions and accompanying memorandums to correct the order on June 21, 1999 and January 24, 2000. Moreover, Charnel did not participate in the independent accountant procedure to avoid the inference that it had consented to waiver of jury trial. The district court never responded to Charnel's objections, but instead entered judgment against Charnel. This was error. Conduct must "clearly and explicitly signal" a waiver, and there must be "clear, unequivocal evidence" of a waiver, before we will find that a party intended to waive its right to jury trial. *Reboy*, 9 F.3d at 1306. It simply cannot be said that Charnel clearly, explicitly and unequivocally waived its right to jury trial.[9] Therefore, the district court erred when it entered judgment upon receipt of the independent accountant's report.

### III

For the foregoing reasons, the judgment of the district court is VACATED and the case is REMANDED for further proceedings.

---

9. Austin also argues that the court has jurisdiction over Nelson because he consented to liability as evidenced by Charnel's conduct in the pretrial conference we have just discussed. Our conclusion that Charnel did not consent to waive its jury trial right on the issues of liability and damages also leads us to reject the conclusion that Nelson consented to liability.