

**FILED**

Feb 03 2016, 9:49 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

David B. Wilson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

James D. Ahern
Brandon Kroft
Heather T. Gilbert
CASSIDAY SCHADE LLP
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brenda Hall, *Appellant-Plaintiff,* | February 3, 2016 |
| v. | Court of Appeals Case No. 49A02-1502-CT-67 |
| | Appeal from the Marion Superior Court No. 4 |
| Dallman Contractors, LLC, Shook LLC, and AT&T Services, Inc., *Appellees-Defendants* | The Honorable Cynthia J. Ayers, Judge |
| | Trial Court Cause No. 49D04-0802-CT-8563 |

**Altice, Judge.**

**Case Summary**

[1] This case arises out of a negligence action filed by Brenda Hall (Hall) against AT&T Services, Inc. (AT&T Services), among others,[1] for injuries she sustained when she tripped and fell on her way into work. AT&T Services filed a motion for summary judgment asserting that Hall's negligence claim against it was barred by the exclusive remedies provision of the Worker's Compensation Act (the Act). *See* Ind. Code § 22-3-2-6. The trial court agreed, finding that the designated evidence established that under the corporate structure of AT&T, Inc., AT&T Services and Ameritech, Hall's employer, were both subsidiaries of AT&T, Inc., and as such, were joint employers of Hall. Consequently, Hall's negligence action against AT&T Services could not stand because Hall had already received a worker's compensation settlement from Ameritech. The trial court therefore granted summary judgment in favor of AT&T Services.

[2] We affirm.[2]

## Facts & Procedural History

[3] On December 5, 2007, Hall, while on her way into work for Ameritech, tripped and fell over the snow-covered legs of a construction sign placed in a walkway adjacent to an ongoing construction project at the AT&T building in downtown Indianapolis. As a result of the fall, Hall injured her arm. On June 8, 2008,

---

[1] Hall has also named Dallman Contractors, LLC, and Shook LLC as defendants in the negligence action. They are not participating in this appeal.

[2] We held oral argument in this matter on January 14, 2016. We commend counsel on the quality of their written and oral advocacy.

Hall filed for worker's compensation benefits. On September 21, 2009, the Worker's Compensation Board of Indiana issued a stipulated award to Hall to compensate her for a twenty-nine percent permanent partial impairment of her right arm.

[4] On February 25, 2008, Hall filed her complaint for damages against Dallman Contractors, LLC (Dallman). On June 30, 2008, Dallman named "AT&T"[3] as a non-party. *Appellant's Appendix* at 27. Hall filed an amended complaint on April 29, 2009, in which she added Shook LLC and "American Telephone & Telegraph Company f/k/a AT&T, Inc. d/b/a AT&T Property Management" (AT&T Property Management) as additional defendants. *Id*. at 33. On October 20, 2009, AT&T Property Management filed an Ind. Trial Rule 17 motion to "substitute AT&T Services, Inc. in its stead as the real party in interest." *Id*. at 54. AT&T Management alleged that "responsibility for physical building maintenance at the AT&T property in question, such as snow and ice removal, is properly designated as AT&T Services, Inc." *Id*. AT&T Management maintained that it was responsible only for administrative management of the AT&T properties, including the property in question. The trial court granted the motion and AT&T Services was substituted for AT&T Management.

---

[3] Dallman referred only to "AT&T" and not a specific corporate entity.

[5]     On January 30, 2012, AT&T Services filed its first motion for summary judgment in which it claimed that Hall's claim against it was barred under the exclusive remedy provision of the Act. On June 4, 2012, the trial court granted summary judgment in favor of AT&T Services, thereby dismissing Hall's claims against AT&T Services with prejudice. After her motion to correct error was denied, Hall appealed. This court reversed and remanded, finding that questions of fact remained as to whether AT&T Services was Hall's employer or a joint employer for purposes of the exclusive remedy provision of the Act. Specifically, the court found that AT&T Services' designated evidence did not establish that it was a subsidiary. *See Hall v. Dallman Contractors, LLC*, 994 N.E.2d 1220 (Ind. Ct. App. 2013) (*Hall I*).

[6]     On May 30, 2014, AT&T Services filed its second motion for summary judgment, again claiming that Hall's claim was barred by the exclusive remedy provision of the Act. AT&T Services designated evidence it argued established that Ameritech and AT&T Services are both subsidiaries of AT&T, Inc., and therefore joint employers of Hall. On January 9, 2015, the trial court entered an order granting AT&T Services' second motion for summary judgment. In support of its decision, the trial court determined that AT&T Services and Ameritech were both subsidiaries of AT&T, Inc., and therefore, for purposes of the Act, were joint employers of Hall. The court concluded that Hall's prior worker's compensation action "was her sole and exclusive remedy against them for the injuries she sustained as a result of her fall on December 5, 2007. [Hall], therefore, cannot proceed in this action against [AT&T Services] and

accordingly; [AT&T Services] is entitled to Summary Judgment as a matter of law." *Appellant's Appendix* at 22-23.

## Discussion & Decision

Hall maintains that summary judgment is inappropriate. We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp,* 914 N.E.2d 756, 761 (Ind. 2009) (quoting Ind Trial Rule 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

The initial burden is on the summary-judgment movant to "demonstrate . . . the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that [s]he was not improperly denied h[er] day in court." *McSwane v. Bloomington Hosp. &*

*Healthcare Sys.,* 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

[9] Indiana law is clear that the Act provides "the exclusive remedy for recovery of personal injuries arising out of and in the course of employment." *Hall I*, 994 N.E.2d at 1224 (citing *GKN Co. v. Magness*, 744 N.E.2d 397, 401-02 (Ind. 2001)). "'Although the Act bars a court from hearing any common law claim brought against an employer for an on-the-job injury, it does permit an action for injury against a third-party tortfeasor provided the third-party is neither the plaintiff's employer nor a fellow employee.'" *Id.* (quoting *GKN Co.*, 744 N.E.2d at 402). In its definition of "employer," the Act provides that "[a] parent corporation and its subsidiaries shall each be considered joint employers of the corporation's, the parent's, or the subsidiaries' employees for purposes of IC 22-3-2-6 [exclusive remedies] and IC 22-3-3-31 [apportionment of award]." I.C. § 22-3-6-1(a).

[10] Hall directs us to *McQuade v. Draw Tite, Inc.*, 659 N.E.2d 1016 (Ind. 1995), wherein our Supreme Court held that an employee was not precluded under the Act from bringing a negligence action against the parent corporation of her employer. At that time, however, the statutory definition of "employer" for purposes of the Act did not include a parent or subsidiary of the defendant's employer. Finding the statutes in the Act were silent as to its applicability to an injured worker seeking recourse against his employer's parent corporation, the court held that the parent corporation fell within the language of I.C. § 22-3-2-

13, which left intact the injured employee's right to pursue a legal claim against any "other person than the employer."

[11] Hall also directs us to *Ritter v. Stanton*, 745 N.E.2d 828 (Ind. Ct. App. 2001), *trans. denied*, wherein this court refused to depart from the *McQuade* holding. We held that an injured employee could maintain an action against The Kroger Company, which was the parent corporation of his employer[4] from which he had already received a worker's compensation settlement.

[12] Effective July 1, 2000, the definition of employer under the Act was amended to provide that "[a] parent or a subsidiary of a corporation or a lessor of employees shall be considered to be the employer of the corporation's, the lessee's, or the lessor's employees for purposes of IC 22-3-2-6." In 2001, the legislature further amended the definition of "employer" for purposes of the Act to provide "[a] parent corporation and its subsidiaries shall each be considered joint employers of the corporation's, the parent's, or the subsidiaries' employees for purposes of IC 22-3-2-6 and IC 22-3-3-31." We find that the amendment to the Act's definition of "employer" abrogated the holdings in *Ritter* and *McQuade*.

[13] Hall nevertheless argues that we should strictly construe the statutory language and find that the Act's definition of employer limits a "joint employer" to the subsidiaries of a single "parent corporation." In other words, Hall argues that the legislature's use of "parent corporation" in the singular signifies its intent to

---

[4] Stanton worked for Gateway Freightline Corporation, which was a wholly owned subsidiary of Kroger.

limit "parent corporation" to a direct or immediate parent corporation and exclude any higher tiered "parent" corporations. Hall maintains that the evidence shows only that the Bell Companies own 100% of Ameritech and not whether any one of the Bell Companies owns a majority of the voting shares of Ameritech. Hall asserts that if only one of the Bell Companies owns a majority of Ameritech's shares, then that company is the parent corporation of Ameritech, thereby making AT&T Holdings and AT&T, Inc. the grandparent and great-grandparent corporations, respectively, of Ameritech. Hall designates them as such because, according to Hall, Ameritech cannot have multiple parent corporations. In the alternative, Hall argues that if none of the Bell Companies holds a majority of shares of Ameritech, then AT&T Teleholdings should be deemed the parent corporation, not AT&T, Inc. Under Hall's interpretation of what constitutes a parent corporation, AT&T Services and Ameritech are not subsidiaries of the same parent corporation and therefore they are not joint employers of Hall such that AT&T Services can assert the exclusive remedy provision of the Act.

[14] We disagree with Hall's reading of the statutory language. As noted by this court in *Hall I*, the Act does not define subsidiary. In *Hall I*, this court therefore looked to the Indiana Business Corporation Law's (BCL) definition of subsidiary, which provides that a subsidiary of a resident domestic corporation "'means any other corporation of which a majority of the outstanding voting shares entitled to be cast are owned (directly or indirectly) by the resident domestic corporation.'" *Hall I*, 994 N.E.2d at 1226 (quoting Ind. Code § 23-1-

43-16).  The court in *Hall I* determined that the evidence presented did not establish that AT&T Services and Ameritech were subsidiaries pursuant to this definition.  To be sure, in addition to the uncertainty as to which entity was Hall's employer, the court noted that the designated evidence showed only that Ameritech owned 8.15% of AT&T Services at the time of Hall's fall, which was clearly not a majority of the outstanding voting shares.  No further evidence was presented concerning the "complex corporate structure" involved.  *Id*. at 1224.

[15]  In its second motion for summary judgment, AT&T Services again argued that Hall's claim was barred by the exclusive remedy provision of the Act.  This time, AT&T Services sought to establish that it and Ameritech were subsidiaries within the meaning of that term as defined in the BCL and to answer the factual questions this court found were left unanswered in *Hall I*.  In support of its second motion, AT&T Services designated the Affidavit of Stacy Hitzemann, Senior Data Analyst for AT&T Services, who affirmed that Hall was employed by Ameritech at the time of the occurrence.  AT&T Services also designated the Affidavit of Steven Threlkeld, who explained the relevant portions of AT&T, Inc.'s corporate structure and the relationship between AT&T Services and Ameritech at the time of the occurrence.  AT&T Services argues that this evidence establishes that it and Ameritech were both subsidiaries of AT&T, Inc. (the parent corporation) as defined by Section 16 of the BCL at the time of Hall's fall.  An organizational chart showing the corporate relationship between

AT&T Services and Ameritech was attached to Threlkeld's affidavit and is reproduced below.



[16] AT&T Services argues that because AT&T, Inc. owns 83.1% of AT&T Services, AT&T Services is a subsidiary of AT&T, Inc. AT&T Services further asserts that because AT&T, Inc. owns 100% of AT&T Teleholdings, Inc., which in turn owns 100% of Illinois Bell Telephone Company, Wisconsin Bell,

Inc., Indiana Bell Telephone Company, Inc., Michigan Bell Telephone Company, and The Ohio Bell Telephone Company (the Bell Companies), which collectively owned 100% of Ameritech, Ameritech is also a subsidiary of AT&T, Inc., albeit a third-tier subsidiary.

[17] In support of its position that there can be multiple tiers of subsidiaries and Ameritech should be deemed a subsidiary of AT&T, Inc., AT&T Services notes that the comments to the BCL's definition of subsidiary elaborate that the term "includes all 'tiered' subsidiaries: If Corporation A owns a majority of the voting shares of Corporation B, which in turn owns a majority of the voting shares of Corporation C, Corporation C is a "subsidiary" of Corporation A for purposes of Chapter 43." This comment squarely addresses the question presented and leads us to conclude that Ameritech is a subsidiary of AT&T, Inc. The fact that Ameritech is a third-tier subsidiary does not alter our conclusion.

[18] Further, we agree that AT&T Services is also a subsidiary of AT&T, Inc. Because Ameritech and AT&T Services are both subsidiaries of AT&T, Inc., they should be considered joint employers pursuant to the Act's definition of "employer." As such, Hall's negligence action against AT&T Services is barred by the exclusive remedies provision of the Act because Hall has already received a worker's compensation settlement from Ameritech. The trial court did not err in granting summary judgment in favor of AT&T Services.

[19] Judgment affirmed.

Riley, J., and Brown, J., concur.